UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN CHARLES WEAVER,

                Plaintiff,

v.                                            Case No. 24-cv-428-pp

WISCONSIN DEPARTMENT
OF CORRECTIONS, *et al.*,

                Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 15) UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

        On October 11, 2024, the court granted the plaintiff's request to reopen this case, vacated the previous judgment, granted his motion for leave to proceed without prepaying the filing fee and screened his complaint. Dkt. No. 14. The court determined that although the complaint alleged a potential Eighth Amendment claim, "it does not say who is liable to the plaintiff for denying him adequate care." Id. at 5. The complaint named Green Bay Correctional Institution, but the court explained that a prison is not a proper defendant under §1983. Id. The plaintiff otherwise "broadly list[ed]" Green Bay staff as defendants, but the court explained that "it is not enough to say that an unspecified group of unidentified persons collectively acted in the same way to violate the plaintiff's rights." Id. (citing cases).

        The court dismissed the complaint because it did not identify a viable defendant who was responsible for violating the plaintiff's Eighth Amendment rights. Id. But the court gave the plaintiff an opportunity to amend his

1

Case 2:24-cv-00428-PP    Filed 12/27/24    Page 1 of 16    Document 16

complaint to add details to "better explain the claims in his complaint." Id. at 6–7. The court also observed that much of the relief the plaintiff sought is not available under the Prison Litigation Reform Act (PLRA). Id. at 7–8. The court advised the plaintiff "to carefully review [its June 28, 2024] order, identify appropriate defendants who personally violated his rights and limit his request for relief to the relief that is available under the PLRA." Id. at 8.

On November 8, 2024, the court received the plaintiff's amended complaint. Dkt. No. 15. This order screens the amended complaint.

## I. Screening the Amended Complaint

### A. Federal Screening Standard

As the court explained in the previous order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The amended complaint names as defendants the Wisconsin Department of Corrections (DOC), A. Baiar, registered nurse D. Henning, Warden C. Stevens, Psychological Services Unit (PSU) Supervisor Dr. Hamilton, registered nurse R. Matushak, social worker Ms. Jandrin, PSU staff Ms. Tayson and Ms. Berg, psychiatrist Dr. Rojas and "[a]ny other staff who is included on any of

these coorespondences [*sic*]" that the plaintiff attached to his amended complaint. Dkt. No. 15 at 1, 6.

The plaintiff realleges that the DOC is denying him medication to treat his opioid use disorder (OUD) and that the Americans with Disabilities Act (ADA) "protects against bans on access to these medications." Id. at 4–5. He names several defendants and lists how he believes some disregarded his medical needs. Id. at 2–4. He first alleges that he attempted to set up appointments for treatment for his OUD. Id. at 2. He says that social worker Jandrin responded and told him that he would have to work his way down to medium custody, and that he was on the waiting list "for both SMART and NA." Id. But he says that neither of those programs are operating or have been available since he arrived at Green Bay. Id. He asserts that the prison was "obligated under the [ADA] Act to provide all forms [of] FDA-approved medications to treat Opioid Use Disorder." Id. at 2–3.

The plaintiff next alleges that social worker Vera wrote to him, agreeing that it was important for him to receive "these medications" but telling him that "there is nothing she can do" until the DOC's Division of Adult Institutions "changes their policy." Id. at 3. She explained that she could provide him only the medication Vivitrol. Id. He does not say whether he requested or was prescribed Vivitrol.

The plaintiff alleges that he told Nurse Henning in an Interview Request that a friend of his who was released from Green Bay died from an overdose. Id. Henning responded by referring the plaintiff to Jandrin to ask about treatment

options, but the plaintiff reiterates that Jandrin already had told him that he was on the waitlist for inactive programs. Id. He says that in another Interview Request, he told Henning about his friends and family who had died from overdoses and asked what steps he could take "to move forward with a Medication assisted treatment program." Id. He says that Henning again referred him to Jandrin. Id. at 4. He asserts that Henning responded to another request that the plaintiff says he sent to psychologist Ms. Berg and told him "this is a psychiatry issue." Id.

The plaintiff alleges that he mentioned his concerns about medication for OUD "in all of [his] psychiatry and psychology appointments" in 2024, which were "usually video visits." Id. He says he had these visits with psychologists Berg, Jandrin and Ms. Tayson, and with psychiatrists Dr. Rojas, Henning and his current psychiatrist (whose name he did not know before filing the amended complaint). Id. He says he also wrote a letter to Attorney General Josh Kaul, and that Warden Stevens responded by referring the plaintiff to the Health Services Unit and PSU. Id. But he says that staff at those units "previously refer[r]ed [him] back and fourth [*sic*] to each other." Id.

The plaintiff alleges that "[n]one of these people offered any real treatment." Id. He says that the only treatment he was offered was "SUDS/ERP at other institutions and at a lower custody level. And SMART/NA which have lists but don't actually exist." Id. He says that these options are not "evidence based treatment proven by scientific studies to work," like the medications he wants. Id. He says that this "distinction between Medical treatment and

5

colloquial treatment when talking about addiction is legally important when it comes to enforcing the ADA." Id. at 5. He asserts that "courts have ruled" that the ADA protects an incarcerated person from being prohibited from having medications like buprenorphine to treat OUD, which he reiterates is a disability. Id. He does not cite cases supporting that statement, but he says that he is "very prepared to do so if given the opportunity." Id.

The plaintiff attached thirty-one pages of exhibits to his amended complaint, but the amended complaint does not directly refer to any of them. Dkt. No. 15-2. These exhibits include the Interview Requests he says he sent to Green Bay staff, the correspondence he received from Warden Stevens and other documents. Id. In one of these requests, the plaintiff listed questions that he wanted staff to answer about medication for OUD and return the paper to him. Id. at 7–8. Defendant Henning answered the plaintiff's questions and reported that Green Bay offers "a vivitrol program," that the plaintiff could "speak with [his] social worker" about forwarding his request to participate in that program and that he would have to meet criteria and follow qualifying guidelines to receive the medication. Id. Other staff provided similar responses to the plaintiff's same questions. Id. at 11–14. In response to an institutional complaint that the plaintiff filed, a reviewing authority also explained that the DOC "does approve use of naltrexone for opiate use disorder" but that it had no program "to safely and securely administer suboxone or methadone." Id. at 31. This response advised the plaintiff that the DOC "is developing a Medication

6

Assisted Therapy (MAT) program but this is not ready for implementation yet." Id.

The plaintiff says that he has attempted "to follow the process that [he has] seen work for other people in other states." Dkt. No. 15 at 5. He asserts "that this is a safety issue," and that he knows many people "who have died from overdoses." Id. He says "that some of them may be living had they been offered Medication assisted treatment for OUD, which include[s] buprenorphine, methadone, and vivitrol." Id. at 5–6.

The plaintiff seeks an injunction providing him access to buprenorphine, methadone or naloxone, which he says he "was prescribed . . . before and they worked well" to treat his OUD. Id. at 7. He seeks "compensation for the price of filing this law suit [*sic*]." Id. He also seeks appointment of an attorney, "a chance to formally open a line of communication to potentially start a MAT program for OUD," the "opportunity to bring this idea via another branch of the court that allows for a more broad injunctive relief that is not covered in cases under the PLRA" or the ability to move his case "to another court" where "broader injunctive relief (a new program in DOC) is allowed" without having to pay "a new filing fee." Id.

C. Analysis

The amended complaint realleges that staff at Green Bay have not given the plaintiff his preferred course of treatment for OUD and (he implies) have given him the runaround when he asks about treatment. He says staff have referred him back and forth to one another without providing answers or

treatment options. He recounts that the options that staff have suggested are either located at other prisons, require him to be at a different custody level or involve programs that are not active. He says his preferred medication-assisted treatment for his disorder is not provided at Green Bay, though he says a social worker did offer to provide him a different medication. That social worker explained that DOC policy did not provide for other medications. Other Green Bay staff informed the plaintiff that suboxone and methadone are not available in the DOC.

As the court explained in the previous order, it is possible that such allegations could state a claim under the Eighth Amendment. Dkt. No. 14 at 5 (citing Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019); and Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)). To state an Eight Amendment claim, the plaintiff must allege that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Peterson v. Wexford Health Sources, Inc., 986 F.3d 746, 751 (7th Cir. 2021) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994); and Petties v. Carter, 836 F.3d 722, 727–28 (7th Cir. 2016) (quotation omitted)). An objectively serious medical condition is one "that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). To satisfy the subjective component, the plaintiff must allege facts showing that the defendants were aware of "a substantial risk of serious harm" to the plaintiff

but that they "disregard[ed] that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff alleges that he suffers from OUD; again, the court assumes for the sake of this order that that is a serious medical need. But the plaintiff does not say whether he is experiencing any symptoms of that disorder or describe the symptoms that he is experiencing. He only generally describes OUD and says it is best treated with medication. Nor has the plaintiff explained why he needs his specified medications to treat his OUD. He does not allege that any medical professional has recommended that he receive buprenorphine, methadone or naloxone to treat his OUD, nor does he say that these are the only medications that may treat his unspecified symptoms. He says he previously was prescribed these medications, but he does not say whether he has a current prescription or a current medical recommendation to continue taking them.

Even assuming the plaintiff is suffering from symptoms of OUD and requires MAT, he says that he has been offered at least one of the medications he lists as an option for those suffering from this disorder. He alleges that Vera told him the DOC provides incarcerated persons with Vivitrol to treat OUD. Other staff have informed the plaintiff that the DOC approves the use of the medication naltrexone for OUD but does not yet have a program to safely administer suboxone or methadone. Although the plaintiff may prefer buprenorphine, methadone or another unavailable medication to treat his OUD, incarcerated persons are "not entitled to receive 'unqualified access to

healthcare'"; they are "entitled only to 'adequate medical care'" to meet a serious medical need. Holloway v. Delaware Cnty. Sheriff, 700 F.3d 1063, 1073 (7th Cir. 2012) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992); and Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006)). The amended complaint and its exhibits show that Vivitrol and naltrexone are available medications in the DOC to treat the plaintiff's OUD. They also show that, as of April 2023, the DOC was working on developing an MAT program, which is precisely the relief the plaintiff seeks in this lawsuit. Dkt. No. 15-2 at 31. The plaintiff does not say whether he requested these medications, whether staff denied or refused to provide them or whether Vivitrol and naltrexone are inadequate medications for his OUD symptoms (which, again, he does not describe). Nor does he say anything about the DOC's work to develop and implement an MAT program. The fact that Green Bay staff have offered him at least two medications, one of which he specifically names as an option to treat OUD, suggests that they have not disregarded his medical need.

The amended complaint also does not allege that any person was aware of but disregarded the plaintiff's OUD. The amended complaint names social workers who have responded to the plaintiff's questions about his treatment and offered medication, nurses who have referred his questions to others and psychologists or psychiatrists with whom he has had video appointments. The plaintiff says Warden Stevens responded to his letter to Attorney General Kaul and referred him to Green Bay staff to address his questions or concerns. The plaintiff's attached exhibits show that several staff at Green Bay have answered

10

Case 2:24-cv-00428-PP   Filed 12/27/24   Page 10 of 16   Document 16

his questions, responded to his grievances and provided additional information for treatment options available through the DOC. The plaintiff does not allege that any of these persons referred him to others knowing it would be a dead end. He says that none of these people offered "real treatment," but most of the people he names or discusses are not medical professionals who *could* provide treatment. Non-medical staff are entitled to defer to medical staff, so long as they do not ignore the incarcerated person. See Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011); Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010). The plaintiff does not allege that he was ignored, and his allegations and attached exhibits show that he was not.

The amended complaint also does not state a claim against any defendant not discussed in the body of the complaint. The plaintiff names the DOC as a defendant, but he cannot proceed against the DOC for the same reasons the court previously told him he could not proceed against the prison: the DOC is a state agency, "and lawsuits under §1983 may be brought only against a 'person' who has violated the plaintiff's rights." See Dkt. No. 14 at 5; Myers v. Indiana Dep't of Correction, 655 F. App'x 500, 503 (7th Cir. 2016) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989)).

Similarly, the plaintiff lists several persons who he wants to sue, and he seeks to proceed against "any other staff" named in correspondences that he attached to his complaint. But like the original complaint, the amended complaint does not explain what any of these persons did or failed to do that violated his rights. As the court explained in the October 11, 2024 screening

order, "Listing the names of potential defendants, without alleging what each one did to violate his rights, is not enough to allow the plaintiff to hold them liable under §1983. The plaintiff 'must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right.'" Dkt. No. 14 at 6 (quoting Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000)). Naming people who responded to the plaintiff's requests without explaining how any of them "'personally participated in or caused the unconstitutional actions'" is not enough to state a claim against those persons. Id. (quoting Alejo v. Heller, 328 F.3d 930, 936 (7th Cir. 2003)). The plaintiff has not stated a claim against any person listed in his exhibits but not discussed in the amended complaint. That includes defendants A. Baiar, Dr. Hamilton, Nurse Matushak, Ms. Tayson and Dr. Rojas.

The plaintiff also alleges that by being denied his preferred medication for OUD, the defendants have violated the ADA. To state a claim under the ADA, the plaintiff must show that (1) he is a qualified individual with a disability; (2) he was denied the benefits of the services, programs or activities of a public entity or otherwise subjected to discrimination by a public entity; and (3) the denial or discrimination was because of his disability. Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015). The Seventh Circuit sets a low bar for pleading claims of discrimination. See Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty., 804 F.3d 826, 833 (7th Cir. 2015) ("A complaint that identified the type of discrimination the plaintiff thought occurred, by

whom, and when was all the plaintiff needed to put in her complaint." (internal quotations and alterations omitted)).

Even under that low standard, the plaintiff has not stated a claim under the ADA. The court assumes for the purpose of this order that the plaintiff is a qualified individual and that OUD is a qualifying disability. But the plaintiff has not shown that he was denied services, programs or activities or been subjected to discrimination because of his disability. As the court has discussed, the plaintiff was told that treatments for his OUD are available at Green Bay. He was denied his preferred course of treatment only because his preferred medications are not available at Green Bay or because he does not meet the qualifications for those alternate treatments or programs. He has not alleged that prison staff have provided buprenorphine, methadone or naloxone to other incarcerated persons, which could allow an inference of discrimination against the plaintiff or his disability. Nor has he alleged that any staff have refused to provide an accommodation of his disability. His attached exhibits show that staff repeatedly have given the plaintiff information about programs and alternative medications he may request to treat his OUD. The plaintiff has not alleged any facts suggesting that the defendants denied him programs or services or discriminated against him because he suffers from OUD.

The amended complaint, like the original, also requests several forms of relief that the court cannot provide. The court cannot order the DOC to provide the plaintiff suboxone or methadone, which staff at his institution do not have access to or cannot safely and securely administer to incarcerated persons. The

13

plaintiff reiterates his desire to establish MAT programs for OUD. But as the court previously explained, "This broad injunctive relief is not available in cases brought under the PLRA." Dkt. No. 14 at 8. And as the court has explained, the DOC apparently is developing an MAT program for OUD but has not implemented it yet. The plaintiff also asks the court to transfer his amended complaint to another court or "another branch of the court" that could allow him to seek broader injunctive relief without paying a new filing fee. In effect, the plaintiff is asking the court to identify the proper form for his case and choose the appropriate forum in which to bring it. The court cannot give the plaintiff legal advice and will not transfer his amended complaint to another court, judge or "branch of the court." If the plaintiff believes there is another route to obtain the relief he seeks, he is responsible for identifying that route and, if appropriate, filing and paying for the appropriate legal action.

The plaintiff's amended complaint suffers from many of the same defects as the original and does not state a claim under the Eighth Amendment claim or the ADA. The court will dismiss the amended complaint and will not give the plaintiff a second opportunity to amend his complaint. Because the court is dismissing his case, it will not recruit him a lawyer.

## II. Conclusion

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the amended complaint fails to state a claim.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court*. See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff another "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year

after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 27th day of December, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**